**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3629-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MIGUEL SUAREZ,

     Defendant-Appellant.

_____

Argued April 9, 2024 – Decided July 18, 2024

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 98-04-0624.

Miguel Suarez, appellant pro se.

K. Charles Deutsch, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Miguel Suarez appeals the Law Division's April 6, 2022 order dismissing his second petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I

To provide context to this appeal, we recite the facts underlying defendant's convictions as we did in our unpublished decision denying defendant's first PCR petition appeal State v. Suarez (Suarez V), No. A-3381-07 (App. Div. May 18, 2010) (slip op. at 2), quoting the trial court's October 26, 2007 decision denying the petition:

> On October 23, 1997, Guarang Kalsaria (age 11) found three dead bodies in his home. His sister, Nahal Kalsaria, soon arrived home from school. Both children ran to a neighbor's house and called the police. Prior to this, another neighbor had phoned the police regarding a suspicious vehicle she noticed parked illegally between the house and another house. Upon arrival, the police saw the vehicle and occupant, co-defendant Darwin Godoy, was seated inside. A cellular phone began to ring several times, and the officer noticed up to three different cellular phones within the vehicle. . . . Godoy was detained by the police.
>
> Later that day, officers responded to the 911 call placed by the children of the residence. Officers found the dead bodies of Ajit Hira, Rejesh Kalsaria, and Bhushan Raval. At trial, Darwin Godoy testified for the State. According to his testimony, co-defendant Dimpy Patel told him he needed someone killed and asked Godoy if he knew anyone. At that point, Godoy

2

introduced Patel to . . . [defendant]. Godoy testified that he knew . . . [defendant] because he purchased illegal cell phones from him. On the day of the murders, Godoy supplied . . . [defendant] with the necessary information to complete the murder. [Defendant] and co-defendant Morales drove to the home of one of the victims and Godoy followed them in a separate vehicle. Godoy testified that he waited in the car while . . . [defendant] and Morales went in with gloves, a gun, a bulletproof vest, and duct tape. Godoy pled guilty to murder and two counts of aggravated manslaughter and received a sentence of thirty years imprisonment with thirty years parole ineligibility.

Other witnesses for the State included . . . [defendant]'s girlfriend, Betsy Tufino, and a George Rivera. . . . Tufino testified that she was aware that Godoy wanted the defendant to rob and kill an Indian man in return for $20,000 and some diamonds. . . . Rivera, [defendant's] cell mate, testified also. He met . . . [defendant] in December of 1997 when they were cell mates for two weeks at the Bergen County Jail. . . . Rivera testified to conversations he had in March of 1999 with . . . [defendant] about the murders. Rivera corroborated Godoy's testimony and stated that . . . [defendant] told him Patel wanted a man killed for swindling him out of money for diamonds and [defendant] agreed to complete the murder for $50,000. [Defendant] apparently provided Rivera with details about the weapons used and how the murder was planned. Specifically, he revealed the plot of the murder, including the agreement to do the job for hire, the fact that he purchased a MAC 11 with a silencer, that he wore a bullet-proof vest and had stored the MAC 11, silencer, and duct tape in a duffle bag and that he and Morales were each carrying a nine-millimeter handgun. Rivera further testified that [defendant] and Morales, upon arrival at the home, realized there were

3

three men present and that although they did not know which man they were supposed to kill, they wanted to complete the job so . . . [defendant] shot all three men. The third man was not dead right away and allegedly [defendant] proceeded to stab him repeatedly in the chest. According to Rivera, after . . . [defendant] and Morales exited the house they stole a Toyota from the home and drove it to Newark and gave it to a neighborhood friend to sell.

Police applied for and obtained a search warrant for . . . defendant's home in Newark where they found a light blue bullet-proof vest hidden under a mattress. They also searched co-defendant Patel's home and found a piece of paper on which the name of the victim had been written, along with his phone number, address, and the notation "brick house." They also found a second piece of paper contained the name "Angel" (defendant's nickname) and several numbers later identified as the defendant's cell phone and pager numbers. The stolen Toyota, which belonged to one of the victims (Hira) was ultimately located several blocks away from [defendant]'s home in Newark. Fibers gathered from [defendant]'s Honda Accord were subsequently determined to match fibers found on the duct tape removed from the murdered men.

Telephone records of the four conspirators were obtained and confirmed that between October 1 and 24, 1997 there were numerous calls between Godoy, [defendant], and Patel. Godoy and [defendant] had been on the phone for [forty-one] minutes just before Officers Sepp approached Godoy's parked car on the day of the murders, and [defendant] called Godoy back [five] minutes later while Godoy was being interviewed by the police. [Defendant] also called Godoy [three] more times in rapid succession. According to Kalsaria's (victim) caller I.D., [defendant] had called the Kalsaria

4

A-3629-21

home at 12:07 p.m. in an apparent attempt to ascertain who was home.

[Suarez V, slip op. at 2-5 (third, fifth, seventh, tenth, twelfth, seventeenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-sixth, and twenty-eighth alterations in original).]

On November 29, 2000, a jury found defendant guilty of three counts of first-degree murder, first-degree robbery, second-degree conspiracy to commit armed robbery, second-degree conspiracy to commit murder, and various related weapons charges. Defendant was sentenced to three consecutive life terms, each with a thirty-year parole disqualifier under the No Early Release Act (NERA) N.J.S.A. 2C:43-7.2; a concurrent twenty-year term for robbery, with ten years of parole ineligibility; a concurrent eighteen-month term for unlawful possession of a firearm silencer; and two concurrent five-year terms for his possession of a firearm without a permit and unlawful possession of a firearm.

On direct appeal, we affirmed defendant's conviction but remanded for resentencing because NERA did not apply to his murder conviction but applied to his armed robbery conviction. State v. Suarez, No. A-5638-00 (App. Div. May 21, 2004), certif. denied, 181 N.J. 547 (2004). While the direct appeal was pending, defendant filed a motion for a new trial based on newly discovered

evidence as well as his first PCR petition, alleging ineffective assistance of pre-trial and trial counsel. Suarez V, slip op. at 6.

The trial court denied defendant's new trial motion and we affirmed on appeal, id., finding "that the newly discovered evidence is cumulative and not material; at most, it is impeaching and contradictory, having no likelihood of changing the verdict if a new trial were granted," State v. Suarez (Suarez II), No. A-1965-05 (App. Div. Feb. 4, 2009) (slip op. at 18), certif. denied, 199 N.J. 132 (2009).

On October 26, 2007, PCR Judge Harry Carroll dismissed defendant's first PCR, finding the alleged twenty counsel errors and deficiencies "both individually and cumulatively, [were] insufficient to warrant an evidentiary hearing or to grant the . . . relief." Suarez V, slip op. at 6.

On May 18, 2010, we affirmed dismissal of PCR, "substantially for the reasons stated in Judge Carroll's comprehensive letter opinion of October 26, 2007." Suarez V, slip op. at 11. We reasoned defendant's "mere re-casting" of his previously denied claims from his motion for new trial, had "no merit [and did] not save [him] from the procedural bar of Rule 3:22-5." Ibid. Furthermore, defendant's "numerous claims of ineffective assistance of counsel, . . . [did] not present[] a prima facie case that any of them fell below an objective standard of

reasonableness to have warranted an evidentiary hearing." Ibid. "Defendant [also] ha[d] not demonstrated a reasonable probability that the alleged deficiencies, singly or cumulatively considered, prejudiced his right to a fair trial." Ibid.[1]

On November 24, 2021, sixteen years after his first petition was filed, defendant filed a second PCR petition or, in the alternative, a motion for new trial.[2] He asserted trial counsel was ineffective for not challenging the State's failure to maintain and test Godoy's entire shirt for blood testing, and failing to call Bernice Sanchez and Estervina Rodriguez, Tufino's sister and mother, as fact witnesses. Defendant also contended counsel should have retained an expert witness to testify the police used suggestive process in having Glen Kohles, the victim's neighbor, identify defendant from a picture in the newspaper as the person who walked by his house the night of the murders. He provided a 2008 report from investigator Dr. Jennifer Dysart stating that Kohles

_____

[1] Prior to filing a second PCR petition, defendant subsequently filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey, which was denied on December 20, 2012. Suarez v. Bartkowski (Suarez IV), No. 10-6209, 2012 U.S. Dist. LEXIS 180362, at *1 (D.N.J. Dec. 20, 2012).

[2] Due to a conflict of interest, the matter was transferred from the Bergen County Vicinage to the Passaic County Vicinage.

should have identified defendant from a six-person photo array and should have been questioned regarding his cross-racial identification of defendant. He also claimed a new trial was warranted based on newly discovered evidence: Tufino's certification recanting her prior testimony against defendant; Walter A. Tormasi's certification that Godoy did not hire defendant to commit the murders; and Johann Mangual's certification that defendant was with her on the day of the crimes.

On April 6, 2022, Judge Sokalski issued an order and comprehensive oral opinion covering sixteen transcript pages denying PCR. The judge determined the petition was untimely under Rule 3:22-4(b) and Rule 3:22-12(a)(2). Rule 3:22-4(b) compels dismissal of a second or subsequent PCR petition unless the defendant can satisfy the time requirement under Rule 3:22-12(a)(2), and alleges the following grounds for relief:

> (A) that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or
>
> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or

(C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].

Under Rule 3:22-12(a)(2), "no second or subsequent petition shall be filed more than one year after the latest of" the following:

(A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged.

The judge found defendant's second petition was not timely filed under Rule 3:22-12(a)(2) because: subsection A was inapplicable since there was no new rule of constitutional law asserted in this case; subsection B was likewise inapplicable because of counsel's failure to call the fact witnesses and an expert to provide testimony regarding the blood found on Godoy's shirt "were well known for more than a year prior" to this filing; and subsection C was also

9

inapplicable because "defendant contends his trial and not [his] appellate counsel was ineffective," and defendant's first petition was denied in 2007—"well past the one-year filing requirement."  The judge also found defendant's petition did not satisfy Rule 3:22-4(a)(2) because his ineffective counsel claims did not involve appellate counsel and that Rule 1:3-4(c)[3] prohibited him from enlarging defendant's time to file his petition.

The judge further held defendant's ineffective counsel contentions were procedurally barred under Rule 3:22-5 because they were previously raised and decided, and the alledged errors failed to satisfy the two-prong Strickland[4] test to establish ineffective assistance of counsel:  (1) counsel's performance was deficient; and (2) the deficient performance actually prejudiced the accused's defense.  The judge reasoned, Sanchez and Rodriguez's testimonies would not have "establish[ed] any alibi defense," because they "did not have any contact with defendant" during the time the murders occurred—1:15 p.m. to 2:00 p.m. Rodriguez "indicated she left the[ir] apartment at approximately 10:45 a.m."

---

[3]  Rule 1:3-4(c) provides "[n]either the parties nor the court may . . . enlarge the time specified by . . . [Rule] 3:22-12."

[4]  Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test in New Jersey).

with Sanchez[5] and did not return until 2:30 p.m., "and that defendant, nor any member of his family, did not tell her that defendant had been in the apartment all day."[6]  Moreover, the issue of whether either statement could constitute an alibi was previously rejected by the first PCR judge.

As to Dysart's 2008 investigative report, Judge Sokalski found trial counsel's failure to contest identification charges was also considered in defendant's first PCR petition.  He stressed Judge Carroll considered "trial counsel's failure to request a general identification and cross[-]racial identification charge" and found that after reviewing the trial record in its entirety, defendant did not demonstrate how the "error was capable of producing an unjust result."  Additionally, he emphasized the report "fail[ed] to address the pretrial testimonial hearing" concerning the identification procedures where the trial court denied counsel's motion to suppress Kholes' out-of-court identification.

---

[5]  Sanchez said she left the apartment with her mother around 10:30 a.m. She also stated that defendant left the house around 4:00 p.m., and did not return until 9:30 p.m.

[6]  On the day of the murders, Rodriguez said, when she woke up at 8:30 a.m. defendant was in her apartment with Tufino.  She left her house at 10:45 a.m. for a doctor's appointment in Newark.  And when she returned at 2:30 p.m. defendant was inside the apartment with Morales.  The two remained in the apartment until 4:00 p.m.

Not included in the materials for this appeal, but relevant to defendant's arguments raised on appeal, is his private investigator Louis V. D'Arminio's report concerning the State's failure to "maintain and test" all of Godoy's bloody shirt. D'Arminio stated counsel should have called a lab technician to identify the blood found on the shirt, to determine whose blood it was. The judge "failed to see the relevancy of defendant's contentions" and found the "identification and blood testing of the shirt'" were "barred" as they were previously adjudicated.

In denying defendant's alternative request of a new trial based on newly discovered evidence, Judge Sokalski found the contention that Tufino, Tormasi, and Mangual's certifications "would change the jury's verdict of guilt" lacked merit. First, Tufino's statement did "not contradict or call into question" her trial testimony. Moreover, the only contradiction between Tufino's 2021 certification and 1997 statement taken by Bergen County Prosecutor's Office was whether her mother permitted detectives to speak to her. Second, Mangual's certification does not meet any of the State v. Carter, 85 N.J. 300, 314 (1981), factors to qualify as newly discovered evidence since her 2021 statement merely restates her 1997 certification. See also State v. Szemple, 247 N.J. 82, 99 (2021) ("[A] new trial is warranted only if the evidence is '(1) material to the issue and

not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.'" (quoting State v. Nash, 212 N.J. 518, 549 (2013))).

Third, citing State v. Bunyin, the judge found the circumstances surrounding Tormasi's certification did not warrant the submission of "new hearsay evidence [addressing] a deceased witness's former statements." 154 N.J. 261, 269 (1998). Furthermore, the "statement is contradictory and impeaching when considering" the other corroborating evidence against defendant. Therefore, Tormasi's statement failed to satisfy the Carter test. The judge stated the State's corroborating evidence included:

> [A] record of telephone calls between Godoy and defendant during the murders. The telephone call from defendant to the victim's house shortly before the murders. Duct tape fibers found in defendant's car consistent with duct tape fibers found on defendant's nails. Defendant's telephone and paging numbers found in Patel's organizer. A note with the name Angel and defendant's cell phone number in Patel's home. Defendant's birth certificate and passport listing his name as ["]Miguel Angel Suarez["]. The victim's stolen car [was] found three blocks from defendant's home. [Defendant's] bulletproof vest [was] found hidden in defendant's [brother's] bed. Three of the victim's neighbors . . . identif[ied] defendant at the crime scene during the murder time frame. Defendant's cell mate . . . Rivera's corroborating testimony.

Defendant's girlfriend . . . Tufino's testimony. And . . . defendant told her he was going to commit murder in exchange for money and diamonds. And Tufino placing Morales driving defendant's Honda, in Newark at about 2:30 p.m. on the day of the murder.

Because defendant failed to "establish a prima facie case" as required by Rule 3:22-10(b), the judge found he was not entitled to an evidentiary hearing. See also State v. Preciose, 129 N.J. 451, 462 (1992). Therefore, defendant's petition and motion were both denied.

II

Before us, defendant contends:[7]

POINT I

REVERSAL OF THE DECISION AND ORDER IS WARRANTED WITH DIRECTION TO REMAND FOR [A] NEW TRIAL, THE TRIAL COURT ERRED BY ARBITRARILY DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF UNDER [RULE] 3:22-12(a) AS UNTIMELY. (Partially [R]aised [B]elow).

    A. The Petition [W]as [T]imely.
    B. Newly Discovered Evidence.

POINT II

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR SECOND [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY

---

[7] Point VII and VIII are arguments from defendant's reply brief.

14

HEARING TO FULLY ADDRESS HIS CONTENTION THAT TRIAL COU[N]SEL FAILED TO GET THE AFFIDAVIT FROM BETSY (CHINA) TUFINO. (Partially Raised [B]elow).

POINT III

CONVICTION SHOULD BE OVERTURNED AND ALL CHARGES VACATED ON PRESENT SECOND APPLICATION FOR [PCR]. (Partially [R]aised [B]elow,)

POINT IV

COUNSEL FAILED TO ENTER ALL APPRO[P]RIATE DEFENSES. (Partially [R]aised [B]elow).

POINT V

THE ENFORCEMENT OF THE BAR RESULTED IN FUNDAMENTAL INJUSTICE, WARRANTS REVERSAL. (Not [R]aised [B]elow).

POINT VI

VACATING THE JUDGMENT OF CONVICTION AND ALL SENTENCES IS WARRANTED TO MAKE A NEW ENTRY FOR A JUDGMENT OF ACQUITTAL. THE COURT MUST REVIEW BOTH ["]THE OLD AND THE NEW EVIDENCE[."] A COURT RE[V]WIE[W]ING A CLAIM OF ACTUAL INNOCENCE PROPERLY CONSIDERS THE ENTIRE RECORD AS A WHOLE. (Partially [R]aised [B]elow).

POINT VII

THE PETITION [AND] MOTION WAS TIMELY, THE LOWER COURT DID NOT "DISMISS" PURSUANT TO <u>RULE</u> 3:22-4(b) IN THE ORDER. INSTEAD [IT] ABUSED ITS DISCRETION TO DENY [SECOND PCR]. THE [SECOND] VERIFIED PETITION ALLEGES ON ITS FACE, [RULE] 3:22-4(b)(1), [<u>RULE</u>] 3:22-12(a)(2)(B), AND [<u>RULE</u>] 3:22-4(b)(2)(B) AS BEING TIMELY, EX[C]EPTIONAL CIRCUMSTANCES EXIST WARRANTNG FULL REVERSAL. (Partially Raised [B]elow).

POINT VIII

DEFENDANT PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, DEVELOPING THE RECORD DOES NOT LIE WITH THE PETITIONER. THE COURT ARBITRARILY DENIED [PCR] TO PREVENT TRIAL COUNSEL FROM TESTIFYING AND EXPLAIN THE REASONS FOR HIS CONDUCT AND INACTION, FULL REVERSAL IS WARRANTED TO PROCEED IN EVIDENTIARY HEARING. (Partially Raised [B]elow).

After considering these arguments in light of the record and the applicable law, we affirm the denial of defendant's second PCR petition and request for a new trial. We do so substantially based on Judge Ronald B. Sokalski's well-reasoned oral decision. There is nothing further to add.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

16

A-3629-21